UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER MAE SMITH,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>            Defendant. | Case No. CV 07-6470-PJW<br><br>MEMORANDUM OPINION AND ORDER |

I.

INTRODUCTION

Plaintiff Walter Mae Smith brings this action seeking reversal of a decision by Defendant Social Security Administration ("the Agency"), denying her application for supplemental security income. Alternatively, she asks the Court to remand the case to the Agency for further proceedings. After reviewing the record and for the reasons discussed below, the Agency's decision is REVERSED and the action is REMANDED for further proceedings consistent with this opinion.


## II.

## STATEMENT OF FACTS

Plaintiff was born on August 11, 1958, and was 48-years-old at the time of the administrative hearing. (Administrative Record ("AR") 41, 165.) She has a ninth-grade education and no past relevant work experience. (AR 165, 170.)

Plaintiff filed an application for supplemental security income on September 16, 2005, alleging that she had been disabled since January 1, 2000, due to mental illness, asthma, pain (back, arm, and leg), and a uterine tumor. (AR 41, 43, 48, 164-65.) On October 19, 2005, just over a month after she filed her application, the Agency requested records from a county mental health facility where Plaintiff had been treated. (AR 161.) The facility did not produce the records. The Agency then requested the records, again. (AR 160.) On December 12, 2005, an Agency employee spoke with an employee at the county facility and was informed that Plaintiff's treating physician was no longer employed at the facility, but that a message would be sent to the records department to have Plaintiff's records forwarded to the Agency. (AR 159.) A call from the Agency to the records department that same day went unanswered. (AR 159.) The Agency provided Plaintiff with a mental health questionnaire to be filled out by her treating psychiatrist. (AR 159.) This form was never returned.

After her application was denied initially, Plaintiff requested and was granted an administrative hearing. (AR 19, 27, 33-36.) She appeared with counsel at the hearing on June 12, 2007, and testified before an Administrative Law Judge ("ALJ"). (AR 162-75.) She told the ALJ that she did not drive and that her driver's license had

expired. (AR 166.)  She also told him that she was able to "do little stuff" around the house and could cook food in a microwave, but needed a friend's help to go grocery shopping. (AR 166-67.)  Plaintiff explained that she suffered from leg pain for which doctors had prescribed Tylenol 500, but that she had not experienced relief with the medication. (AR 168.)  She testified that she used a cane for balance due to her leg impairment and used an inhaler for breathing problems. (AR 167-68.)

A vocational expert also testified at the hearing.  He opined that a hypothetical person with Plaintiff's residual functional capacity could work. (AR 170-74.)

On June 18, 2007, the ALJ issued a decision denying Plaintiff's claim under the Agency's five-step sequential evaluation process. (AR 6-17.)  Plaintiff appealed to the Appeals Council, which denied Plaintiff's request for review on August 9, 2007. (AR 3-5.)  Plaintiff then commenced this action.

## III.

## DISCUSSION

Plaintiff claims the ALJ erred when he: 1) failed to adequately develop the record; 2) failed to properly consider the consultative examiner's findings; 3) found that Plaintiff was not credible; and 4) failed to pose a complete hypothetical question to the vocational expert.  For the following reasons, the Court finds that the ALJ erred and orders remand for further proceedings.

A.   <u>The ALJ's Failure to Develop the Record</u>

In her first claim of error, Plaintiff alleges that the ALJ erred when he failed to fully develop the record by obtaining the medical records from the Los Angeles County Mental Health Department facility

where Plaintiff was treated for psychiatric complaints.  Defendant claims that there was no error because the Agency did all it could to obtain the records, and, besides, it was Plaintiff's duty to obtain them in the first place.  For the following reasons, the Court sides with Plaintiff and orders remand for further development of the record.

Both sides have provided the Court with relevant legal authority for the proposition that the other side was legally responsible for obtaining the records from the county mental health facility.  Plaintiff's cite the Social Security Regulations and case law, which stand for the proposition that an ALJ has a duty to fully and fairly develop the record, particularly where, as here, the claimant may have a psychiatric disorder.  Plaintiff notes that this duty exists even when the claimant is represented by counsel.  Defendant cites equally compelling authority for the proposition that a claimant has an obligation to prove that she is disabled and must furnish medical records to establish her disability.

Thus, the case law and the regulations cited by the parties do not provide a clear answer to the question of which side is at fault here.  In fact, a fair reading of the authority in the context of this case seems to suggest that both sides had a duty to obtain the records.  The Court makes the following observations.

First, as to Plaintiff's counsel, he knew that these records had not been received in the record, but he did not cure that mistake.  He should have obtained these records by writing to the mental health facility and demanding that they be produced and attaching a waiver form signed by his client authorizing their production.  Assuming that the records still were not produced, he should have followed up with a

telephone call and, perhaps, a personal visit to the facility to obtain the records.  Assuming that all these efforts were in vain, he could have submitted his correspondence to the Agency and made it a part of the record so that his efforts could have been documented.

In addition, counsel should have tracked down his client's treating psychiatrist, who had left the mental health facility, and asked her to fill out the check-the-box form provided by the Agency so that the ALJ could have had the benefit of the doctor's opinion. Counsel compounded his mistakes by not objecting at the hearing to the fact that the treating psychiatrist's records were missing.  (AR 164.) He further erred when he never even raised the issue of Plaintiff's psychiatric condition at the hearing and questioned her only about her physical maladies.  (AR 167-68.)

The Agency, too, should have done more to obtain these records. More follow-up was obviously needed here.  The Agency could have called the facility, again, and, if the facility failed to respond, subpoenaed the documents.  It also could have located Plaintiff's doctor and asked her to fill out a check-the-box form so that it would have had the benefit of the doctor's opinion.

Faced with a difficult choice here of affirming the ALJ's decision, which is clearly not based on all of the relevant evidence, or sending the case back to the Agency to allow the parties to obtain all the relevant evidence and then decide the case, the Court chooses the latter.  On remand, the parties are directed to obtain the relevant documents and then proceed to a determination of the merits.

B.   <u>The ALJ's Consideration of the Consultative Examiner's Findings</u>

Plaintiff complains that the ALJ erred by ignoring the consultative psychiatrists opinion that "it may be best if [Plaintiff] initially works in a sober work environment." (Joint Stip. at 9-10.) Because the jobs identified by the vocational expert that Plaintiff could do did not involve working in an environment where there was alcohol (or drugs), any error was harmless.

The Ninth Circuit has made clear that harmless error applies to social security rulings. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (applying harmless error analysis to social security decisions). A harmless error is one that does not effect the ultimate outcome of the proceeding. *Id.*

Here, Plaintiff complains that the examining doctor concluded that Plaintiff should work in a "sober" environment. (AR 124.) Though this term is not defined, it presumably means that the work environment not include the consumption of alcohol, i.e., a restaurant or bar where alcohol is served to the customers. The jobs identified by the vocational expert in this case do not involve the consumption of alcohol. Thus, even assuming that the ALJ should have included this restriction in the hypothetical questions to the vocational expert, any error was harmless because all of the jobs the vocational expert identified were jobs that were performed in sober environments. For these reasons, this claim of error is rejected.

C.   <u>The ALJ's Consideration of Plaintiff's Credibility</u>

Next, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting her subjective complaints. (Joint Stip. at 11-12.) For the following reasons, the Court agrees.

The Agency evaluates a claimant's credibility under a two-step analysis. First, the claimant must "produce medical evidence of an underlying impairment which is reasonably likely to be the cause" of the symptoms alleged. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991). The condition need not support the severity of the symptoms, and the ALJ may not discredit a claimant's allegations of pain solely on the ground that the allegations are unsupported by objective medical evidence. *Id.* at 346-47. Second, in the absence of affirmative evidence that a claimant is malingering, the Agency's reasons for rejecting the testimony must be specific, clear, and convincing. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) ("[T]he ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so.'" (quoting *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). In order to reject a claimant's allegations, an ALJ must make findings which support this conclusion. *Bunnell v. Sullivan*, 947 F.2d at 345. This means that the ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion. *Smolen*, 80 F.3d at 1284; *see also Lester*, 81 F.3d at 834 ("[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints"). In weighing credibility, the ALJ may consider, among other things, the extent of treatment or any unexplained failure to seek treatment, inconsistent testimony or inconsistencies between testimony and conduct, and work records. *Orn*, 495 F.3d at 636; *Smolen*, 80 F.3d at 1284.

The ALJ gave two reasons for rejecting Plaintiff's complaints of physical limitations: (1) her complaints were not supported by the relatively weak medical evidence, and (2) she put forth inconsistent effort during pulmonary function testing.  (AR 15.)  The ALJ also gave two reasons for rejecting Plaintiff's allegations of mental limitations: (1) there was no evidence of actual treatment, and (2) Plaintiff alleged in her written questionnaire that she suffered from hallucinations but denied to the examining psychiatrist that she did and she did not appear to be hallucinating in the waiting room when she was waiting to be seen by the doctor.  (AR 15.)

The ALJ found that Plaintiff's medically determinable impairments could produce the symptoms alleged.  (AR 13.)  Moreover, he did not find that Plaintiff was a malingerer, despite having relied on Plaintiff's lack of effort on medical exams as one reason for discounting her credibility.  (AR 13, 15.)  Thus, he could reject Plaintiff's testimony only for specific, clear, and convincing reasons.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1281, 1283-84).

The first reason relied on by the ALJ for rejecting Plaintiff's credibility was that the objective medical evidence did not support the severity of her claimed symptoms.  However, once Plaintiff produced objective medical evidence of an underlying impairment--which she did here--the ALJ could not reject her testimony based solely on a lack of objective medical evidence fully supporting her claims of pain.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (holding that the ALJ clearly erred in rejecting the claimant's subjective pain testimony solely for lack of objective medical evidence corroborating the testimony, where claimant suffered from a series of severe

8

impairments capable of causing pain); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). Because, as explained below, the remaining factors relied on by the ALJ are rejected, the lack of objective medical evidence alone cannot support the ALJ's credibility determination.

The second reason relied on by the ALJ was that the doctor who conducted the internal medicine evaluation on Plaintiff noted in her report that Plaintiff's effort during pulmonary function testing was inconsistent. (AR 15.) That report, however, does not explain whether the inconsistent effort was due to Plaintiff intentionally trying to manipulate the test or whether it was due to Plaintiff's impairment. For example, the doctor noted in her report:

> Moderate-to-severe obstruction with moderate restriction, minimal response to bronchodilator, but there were inconsistencies on the examination with slow start and abrupt endings. The claimant had a continuous dry cough noted during the clinic visit.

(AR 100.) The doctor also noted that Plaintiff's cough "was difficult for her to control." (AR 100.) Significantly, despite the "inconsistencies" during testing, the doctor ultimately relied on this testing to conclude that Plaintiff suffered from moderate-to-severe asthma, which resulted in "clear significant limitations." (AR 100-01.) Thus, the doctor did not find that the test results were unreliable as a result of Plaintiff's effort, or lack thereof, and, therefore, the ALJ erred when he concluded that her effort undermined her credibility. Absent further clarification from this doctor, this reason is not enough to establish that Plaintiff was not credible.

1         The third reason cited by the ALJ to discount Plaintiff's
2 credibility was that there was no evidence of actual mental health
3 treatment. (AR 15.) Although the medical record does not contain the
4 treatment notes from Plaintiff's treating doctor, there is clearly
5 evidence in the record that Plaintiff received mental health
6 treatment. The Agency's own records reflect that it was informed that
7 Plaintiff was treated at the facility and that records of that
8 treatment do exist. (AR 159.) As such, the ALJ should not have based
9 his credibility finding on a lack of mental health treatment records
10 where he was on notice that Plaintiff had received mental health
11 treatment and the absence of the records was due, in part, to the
12 Agency's failure to obtain them.
13        Finally, the ALJ rejected Plaintiff's credibility based on
14 perceived inconsistencies between her statements in her written
15 questionnaire and her statements to the examining psychiatrist and the
16 psychiatrist's observations. (AR 15.) Specifically, the ALJ points
17 out that, in a "Function Report" that Plaintiff submitted to the
18 Agency, she complained that she was afraid to socialize "because [she]
19 might hallucinate things." (AR 15, 60.) The ALJ found that this
20 statement was inconsistent with a statement she made to the examining
21 psychiatrist that she did not experience hallucinations, and his
22 findings that at the time of the examination Plaintiff did not appear
23 to be paranoid or to be responding to internal stimuli. (AR 15, 121,
24 122.)
25        The ALJ failed to consider the entirety of the psychiatrist's
26 findings, however. The psychiatrist reported that Plaintiff "heard
27 voices *in the past* but *currently* denies auditory or visual
28 hallucinations." (AR 122 (emphasis added).) It is not clear from

this notation what "in the past" or "currently" mean.  Under any interpretation, however, Plaintiff's statement that she had experienced hallucinations but was not experiencing them at the time of the examination is not inconsistent with her statement in the Function Report that she was afraid to socialize because she "might" hallucinate.  Further, the fact that Plaintiff did not appear to be hallucinating in the waiting room before seeing the examining psychiatrist does not appear to be a good test for whether she ever experienced hallucinations.  Presumably, even people who suffer from hallucinations do not suffer from them constantly.[1]

For all these reasons, the Court concludes that the reasons cited by the ALJ are not sufficient to support his finding that Plaintiff was not credible.  On remand, the ALJ should reconsider this issue and determine anew whether Plaintiff is credible.

C.   The ALJ's Hypothetical Questions

In her final claim for relief, Plaintiff argues that the ALJ erred by failing to pose a complete hypothetical question to the vocational expert.  Specifically, Plaintiff complains that the ALJ's hypothetical question failed to provide for Plaintiff's use of a cane

---

[1] In the Function Report, Plaintiff also claims that she has "hallucinations all the time." (AR 58.)  While this appears to be slightly more inconsistent with her claims to Dr. Lavid, because the ALJ did not rely on it the Court cannot affirm his decision on that basis.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (explaining court cannot affirm on the basis of evidence the ALJ failed to discuss).

and her need for a sober work environment. (Joint Stip. at 15-17.) For the reasons set forth below, this issue, too, should be re-addressed on remand.

A hypothetical question posed to a vocational expert must be "based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995)). If the ALJ does not include all of a claimant's limitations in a hypothetical question to the vocational expert, the vocational expert's opinion carries no weight.

The hypothetical questions posed by the ALJ did not contain a restriction for a sober work environment. As discussed above, however, this is irrelevant because the vocational expert only identified jobs where no alcohol was present.

The hypothetical questions also did not include a condition that Plaintiff needed to use a cane to walk. The ALJ apparently left this restriction off because he found that Plaintiff's allegations that she needed a cane were not credible. (AR 14.) On remand, the ALJ should take another look at this issue in the overall reassessment of Plaintiff's credibility. If he finds that Plaintiff needs a cane to walk, he should include this restriction in the hypothetical to the vocational expert. If, on the other hand, he determines that she does not need a cane, he need not include this restriction.

III.

CONCLUSION

For the foregoing reasons, the Agency's decision is reversed and the case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED: February 20, 2009.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\SMITH, W 6470\Memo_Opinion.wpd